ALTAIR LAW
Craig Peters, Esq., SBN 184018
*cpeters@altairlaw.com*
Jasleen Singh, Esq., SBN 315315
465 California Street, Fifth Floor
San Francisco, CA 94104-3313
Tel: (415) 988-9828
Fax: (415) 988-9815

DOGRA LAW GROUP PC
Shalini Dogra, SBN 309024
*shalini@dogralawgroup.com*
2219 Main Street, Unit 239
Santa Monica, CA 90405
Tel: (747) 234-6673
Fax: (310) 868-0170

Attorneys for Named Plaintiffs AMNERY CASTANEDA and DANIELLE STEINER and
Proposed Class

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| AMNERY CASTANEDA and DANIELLE STEINER, on behalf of themselves and all others similarly situated;<br><br>Plaintiffs,<br><br>v.<br><br>VI-JON, INC., a Missouri Corporation; and DOES 1 through 50, Inclusive,<br><br>Defendants. | Case No: 23-CV-00473-AMO<br><br>**PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>1. COMMON LAW FRAUD<br><br>2. INTENTIONAL MISREPRESENTATION<br><br>3. NEGLIGENT MISREPRESENTATION<br><br>4. UNJUST ENRICHMENT<br><br>5. CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750, *et seq.*<br><br>6. VIOLATION OF THE FALSE ADVERTISING LAW ("FAL"), CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17500, *et seq.*<br><br>7. VIOLATION OF THE UNFAIR COMPETITION LAW ("UCL"), CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200 *et seq.*<br><br>8. BREACH OF EXPRESS WARRANTY |

9.   BREACH OF IMPLIED WARRANTY
OF MERCHANTABILITY

**DEMAND FOR JURY TRIAL**

Plaintiffs Amnery Castaneda and Danielle Steiner, by and through their attorneys, bring this action on behalf of themselves and all other similarly situated persons against Vi-Jon Incorporated ("Defendant Vi-Jon"), and Does 1 through 50. Plaintiffs hereby allege, on information and belief, except as those allegations which pertain to the named Plaintiffs, which allegations are based on personal knowledge, as follows:

**NATURE OF THE ACTION**

1.   To capitalize on the worldwide Covid-19 pandemic and the exponentially heightened demand for hand sanitizers, Defendant negligently or intentionally made misleading representations about the identity, the ethyl alcohol concentration and the efficacy of their "Germ-X® moisturizing original hand sanitizer" ("Product").

2.   Defendant inaccurately and falsely labels and advertises Product as "62% ethyl alcohol," that "kills 99.99% of germs," and "kills germs in 15 seconds," when in reality, Product contains nearly **ten percent** less alcohol than its label states and advertises, and less than what is recommended by the Centers for Disease Control and Prevention (CDC) for a hand sanitizer. As such, it cannot conceivably perform or act as it claims to in killing 99.99% of germs and killing germs in 15 seconds.

3.   Product is misbranded under California law. Defendant's deceptive marketing scheme of Product includes tactics such as falsely labeling it based upon claims of its single active ingredient, allegedly"62% ethyl alcohol". This reasonably represents  to consumers that this active ingredient, ethyl alcohol, — enables Product to "kill[s] 99.99% of germs," and "kill[s] germs in 15 seconds".  As CDC guidelines recommend,, hand sanitizers should have at least 60% alcohol concentration.  *https://www.cdc.gov/handwashing/show-me-the-science-hand-sanitizer.html*  (last visited April 16, 2024) Studies have repeatedly found that sanitizers with an alcohol concentration of 60-95% are more effective at killing germs than those with a lower alcohol concentration, which alternatively may only reduce the growth of germs rather than kill them outright, or may not work

FIRST AMENDED CLASS ACTION COMPLAINT

equally well for many types of germs. [1,2] As Plaintiffs' independent tests verify, Product lacks the requisite amount of alcohol between 60-95% that the CDC recommends to be considered effective.

4.      At all relevant times, Defendant packaged, advertised, marketed, distributed and sold Product to unsuspecting consumers at retail stores and online throughout California and the United States based on the misrepresentation that the Product contained 62% ethyl alcohol, and accordingly had the ability to kill 99.99% of germs, and would kill germs in 15 seconds. In truth, Product contains a concentration of ethyl alcohol that is nearly **ten percent** less than what Defendant advertised in claiming that Product can kill 99.9% of germs and kill germs in 15 seconds.

5.      Reasonable consumers rely on product labeling in making purchasing decisions. When a reasonable consumer sees a hand sanitizer label claims to contain  "62% ethyl alcohol," as its active ingredient, he or she reasonably expects that the health safety item will contain just that - 62% ethyl alcohol. Likewise, when a reasonable consumer sees hand sanitizer promoted to "kill 99.99% of germs," and "kill germs in 15 seconds," which are claims related to its efficacy, she or he will reasonably expect the product does so based on its contents, specifically its active ingredients, being what they claim to be and as potent as they claim to be.

6.      In reliance on Defendant's misleading marketing and deceptive advertising practices for Product, Plaintiffs, and other deceived and/or defrauded consumers/class members, reasonably thought they were purchasing a hand sanitizer that contained 62% ethyl alcohol with a specific level of potency falling within the recommended CDC guidelines of 60-95%, which related to Product's purported efficacy in "killing" or "eliminating" 99.99% of germs, and doing so within 15 seconds, not just reducing them. In fact, neither Plaintiff nor any other deceived and/or defrauded consumers/class members received any such hand sanitizer at all with the advertised and recommended amount of ethyl alcohol. Plaintiffs and other deceived and/or defrauded consumers/class members relied on Defendant's misbranding and mislabeling of Product and its

---

[1] Todd EC, Michaels BS, Holah J, Smith D, Greig JD, Bartleson CA. Outbreaks where food workers have been implicated in the spread of foodborne disease. Part 10. Alcohol-based antiseptics for hand disinfection and a comparison of their effectiveness with soaps. J Food Prot. 2010 Nov;73(11):2128-40. doi: 10.4315/0362-028x-73.11.2128. PMID: 21219730.

[2] Kampf G, Kramer A. Epidemiologic background of hand hygiene and evaluation of the most important agents for scrubs and rubs. Clin Microbiol Rev. 2004 Oct;17(4):863-93, table of contents. doi: 10.1128/CMR.17.4.863-893.2004. PMID: 15489352; PMCID: PMC523567.

contents.  Because of Defendant's conduct, Plaintiffs and other deceived and/or defrauded consumers/class members were tricked into buying a health safety item that actually lacked the composition and benefits that they reasonably but incorrectly thought Product had.

7.     Plaintiffs and other deceived and/or defrauded consumers/class members purchased Product because they reasonably believed Defendant's packaging and advertising that Defendant's Product contained 62% ethyl alcohol, and had the efficacy to kill 99.99% of germs, within 15 seconds.  Had Plaintiffs and other deceived and/or defrauded consumers/class members known Product had nearly ten percent less ethyl alcohol and failed to have the effectiveness at eliminating germs that Defendant had promoted on its packaging, they would not have purchased Product. As a result, Plaintiffs and other consumers/class members have been deceived and defrauded.

8.     Defendant's labeling, marketing, and advertising involves multiple false and misleading statements as well as material omissions of fact concerning Product that have injured Plaintiffs and others deceived and/or defrauded consumers/class members by duping them into buying a premium priced hand sanitizer. Due to the false and deceptive business practices and representations, Defendant has misled the public into believing that Product contains  62% ethyl alcohol, a sufficient amount of alcohol to otherwise be considered effective per the CDC's guidelines, and so accordingly, could kill99.99% of germs and kills germs in 15 seconds.

9.     Based on the fact that Defendant's advertising misled Plaintiffs and other deceived and/or defrauded consumers/class members, Plaintiffs bring this class action against Defendant to seek reimbursement of the purchase price they and other defrauded consumers/class members paid due to Defendant's false and deceptive representations about the contents and capabilities of Product.

10.     Plaintiffs seek relief in this action individually and on behalf of all purchasers of Product in California for common law fraud, intentional misrepresentation, negligent misrepresentation, and unjust enrichment. Additionally, Plaintiffs seek relief in this action individually and on behalf of all purchasers of Product in California for violation of the California Bus. & Prof. Code §§17500, *et seq*., California's False Advertising Law ("FAL"), Bus. & Prof.

1 Code §§17200, *et seq*., as well as California's Unfair Competition Law ("UCL"), as well as Uniform

2 Commercial Code §§ 2-313 for breach of express warranty

3 **JURISDICTION AND VENUE**

4 11.    This Court has subject matter jurisdiction pursuant to the 28 U.S.C. § 1332(d), the

5 Class Action Fairness Act, because the aggregate amount in controversy exceeds $5,000,000.00,

6 exclusive of interests and costs, and at least one class member is a citizen of a state different from

7 Defendant Vi-Jon. Additionally, this is a class action involving more than 1,000 class members.

8 12.    The Court has personal jurisdiction over Defendant Vi-Jon pursuant to Cal. Code Civ.

9 P. § 410.10, as a result of Defendant's substantial, continuous and systematic contacts with the State,

10 and because Defendant Vi-Jon has purposely availed itself of the benefits and privileges of

11 conducting business activities within the State of California.

12 13.    Pursuant to 28 U.S.C. §1391, this Court is the proper venue for this action because a

13 substantial part of the events, omissions and acts giving rise to the claims herein occurred in this

14 District. Additionally pursuant to Cal Code Civ. § 1780(d), venue is proper in this county. See

15 attached hereto, Exhibit 1: Plaintiffs' Venue Affidavits.  Moreover, Defendant Vi-Jon distributed,

16 advertised and sold Product, which is the subject of the present Complaint, in this District.

17

18 **PARTIES**

19 14.    Plaintiff Amnery Castaneda is a citizen and resident of California, and resides in

20 County of Orange.

21 15.    Plaintiff Danielle Steiner is a citizen and resident of California, and resides in the

22 County of Alameda. Plaintiff Steiner purchased Product in County of Orange.

23 16.    Defendant Vi-Jon is a Missouri corporation headquartered in the State of Missouri,

24 with its principal place of business at 8800 Page Avenue, St. Louis, Missouri 63114. Therefore,

25 Defendant Vi-Jon is a citizen of the State of Missouri. Defendant Vi-Jon manufactures, mass

26 markets, and distributes Product throughout California and the United States.

27 17.    Plaintiffs are informed and believe, and based thereon allege that at all times relevant

28 herein each of these individuals and/or entities was the agent, servant, employee, subsidiary,

affiliate, partner, assignee, successor-in-interest, alter ego, or other representative of each of the remaining Defendants and was acting in such capacity in doing the things herein complained of and alleged. Plaintiffs reserve their right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant Vi-Jon who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## **FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

18.     Consumers often purchase a particular type of hand sanitizer based upon its ethyl alcohol concentration and efficacy against killing germs. These attributes became and have remained especially important to buyers during and after the Covid-19 pandemic.  While various studies and statistics report data about the increase of hand sanitizer sales in the wake of the Covid-19 pandemic, all of them unequivocally affirm that demand for and sales of hand sanitizers rose significantly. *https://doi.org/10-6028/NIST.IR.8342* (last visited Apr. 28, 2022).

19.     Defendant knows or has reason to know that consumers would find the challenged attributes regarding the Product's active ingredient potency important in their decision to purchase Product, as indicated by the fact that Defendant emphasized the advertising claims prominently on Product's labeling and further based on published guidelines by the CDC that effective hand sanitizers should contain at least 60-95% alcohol. Defendant has been advertising and selling Product as a "hand sanitizer" that has "62% ethyl alcohol", which would conveniently fall within the CDC recommended threshold and also support Product'smarketing that Product as a hand sanitizer that "kills 99.99% of germs," and "kills germs in 15 seconds."  In reality, Product has a concentration that is significantly less than 62% and a composition that is less than what the CDC advises as effective to use for "killing" or "eliminating" germs rather than simply reducing the growth of them.

20.     Defendant consistently advertises Product as containing "62% ethyl alcohol." However, Defendant's labeling and marketing scheme for Product is false. Independent testing has affirmed that the alcohol concentration falls nearly **ten percent** below Product's labeling, and that it is substantially less than the CDC's recommended sixty percent ethyl alcohol minimum for hand

FIRST AMENDED CLASS ACTION COMPLAINT

sanitizers.   https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/hand-sanitizer.html (last visited Apr. 28, 2022).

21.   The alcohol concentration of Product was tested using two quantitative techniques: nuclear magnetic resonance (NMR) and gas chromatography (GC). Many scientists regard NMR as a more reliable and accurate method for measuring alcohol concentration. M. Ehlers, *Towards harmonization of non-targeted H NMR spectroscopy-based wine authentication: instrument comparison*, 132 FOOD CONTROL 108508 (2022). Indeed, governmental agencies themselves, including the U.S. Department of Commerce's National Institute of Standards and Technology, has relied on NMR testing to analyze alcohol concentrations in hand sanitizers. *https://doi.org/10-6028/NIST.IR.8342* (last visited Apr. 28, 2022).  While the  GC test results revealed Product fails to meet the 60% threshold recommended by the CDC with only 59.1% alcohol, the most reliable test, NMR, indicated that Product contained only 53.56% alcohol. Importantly, *both* testing methods indicated that Product fell below the CDC recommendation, as well as Defendant's advertised labeling claims.  Furthermore, the results of the NMR and GC testing demonstrate that the knowledge, belief, and information supporting this suit was formed after conducting reasonable inquiry.  Additionally, the NMR and GC test results also show that the factual contentions of the instant matter have evidentiary support and will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

22.   Additionally, Defendants misrepresent Product's efficacy against germs. Product's label claims that it "kills 99.99% of germs" and "kills germs in 15 seconds."  Both of these claims are false in light of Product's lower, actual ethyl alcohol concentration.

23.   Defendant's Product lacking 62% ethyl alcohol, it's deceptive representation that Product kills 99.99% of germs, and the Defendant's doubling-down on this deceptive representation by saying it kills germs within 15 seconds, means that consumers are not receiving the benefit of their bargain. Moreover, Defendant is deceptively saving substantial sums of money in manufacturing Product by using less ethyl alcohol as an ingredient. Defendant's marketing, labeling, and packaging of Product are designed to, and do in fact, deceive, mislead and defraud consumers.

24.     Defendant's knew, or should have known, that Product's true ethyl alcohol concentration fell below the CDC guidelines because the Food and Drug Administration (FDA) required Defendant to test and verify the alcohol content in each unit of Product before distribution. 21 C.F.R §211.65; see also *https://www.globalsupplychainlawblog.com/food-drug/considerations-for-companies-interested-in-manufacturing-hand-sanitizer-to-fight-against-covid-19/* (last visited Apr. 28, 2022). Based on the FDA's mandatory pre-sale testing rules for hand sanitizers, Defendant also should have known that Product's own "62% ethyl alcohol" label was false. Accordingly, Defendant has no reasonable basis for labeling, advertising, marketing or packaging Product as containing "62% ethyl alcohol" as its active ingredient or as "kills 99.99% of germs" or "kills germs in 15 seconds." Because of Defendant's deception and fraud, consumers are misled into paying for Product and for its advertised benefits and characteristics of hand sanitizer when in fact the gel does not contain the amount of active ingredient it claims to  for such advertised benefits to exist.

25.     The deceptive and fraudulent actions taken by Defendant caused significant harm to consumers. Plaintiffs and other similarly deceived and/or defrauded consumers/class members who purchased Product because they reasonably believed, based on Defendant's marketing, packaging, labeling and advertising schemes, that Product was comprised of 62% ethyl alcohol and could kill 99.99% of germs in 15 seconds. Had Plaintiffs and other deceived and/or defrauded consumers/class members known Product actually lacked its advertised ethyl alcohol concentration and strength against germs, the most critical ingredient in a true hand sanitizer, they would not have bought Product, or would have paid substantially less money for it. As a result, Plaintiffs and similarly deceived and/or defrauded consumers/ class members have suffered from fraud, misrepresentation, unfair business practices, and false advertising, as well as suffered economic injury. Plaintiffs were economically harmed by Defendants' false labeling, deceptive marketing and misleading packaging conveying the message that the Product had 62% ethyl alcohol and "kills 99.99% of germs," and "kills germs in 15 seconds." At worst, there is no value of Product that Plaintiffs actually purchased and at best, only *de minimis value* in purchasing a hand gel that fails to comply with the recommended CDC guidelines.

26.     Plaintiffs Castaneda and Steiner each purchased at least one unit of Product from a retail store in the County of Orange during the relevant time period, and as recently as 2020. Plaintiff Castaneda bought at least one unit of Product from either a Walgreens or CVS store. Plaintiff Steiner purchased at least one unit of Product from a CVS store. Plaintiffs bought and consumed Product because, based on Defendant's marketing and labeling scheme, they believed Product functioned as a hand sanitizer, had 62% ethyl alcohol, and could kill 99.99% of germs, and kill germs in 15 seconds.  Plaintiffs purchased Product in reliance upon this labeling and advertising of Product, without knowledge of the fact that it had a significantly lower concentration of its only active ingredient, ethyl alcohol, which undermines its capacity to "kill" or "eliminate" 99.99% of germs, or "kill" germs within fifteen seconds. Plaintiffs consumed Product as intended and would not have purchased Product if they had known that the advertising as described herein was false, misleading and deceptive.

27.     During the time when they were each purchasing and consuming Product, Plaintiffs did not take steps to verify Product actually contained the amount of active ingredient the label claimed it had and whether its representations on the packaging regarding its efficacy and scope of killing germs were accurate. Reasonable consumers, such as Plaintiffs, would not have considered it necessary to verify the clear message conveyed by Defendant's labeling, advertising, marketing and packaging of Product.

## RULE 9(B) ALLEGATIONS

28.     Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirement of Rule 9(b) by establishing the following elements with sufficient particularity:

29.     WHO: Defendant made material misrepresentations and omissions of fact in the labeling, packaging and marketing of Product.

30.     WHAT: Defendant made material misrepresentations and omissions of fact by labeling, packaging and marketing Product as "hand sanitizer," "62% ethyl alcohol," "kills 99.99% of germs," and "kills germs in 15 seconds." Defendant made these claims with respect to Product

even though Product does not in fact have the required level of alcohol to constitute a hand sanitizer, does not contain 62% ethyl alcohol, does not eradicate 99.99% of germs, and certainly does not do so in 15 seconds. Defendant's misrepresentations and omissions were material because a reasonable consumer would not have purchased, or paid as much for, Product if he or she knew that they contained false representations.

31.     <u>WHEN</u>: Defendant made the material misrepresentations and omissions detailed herein continuously throughout the Class Period.

32.     <u>WHERE</u>: Defendant's material misrepresentations and omissions were made, *inter alia*, on the labeling of Product.

33.     <u>HOW</u>: Defendant made written misrepresentations and failed to disclose material facts on the labeling and packaging of Product and other advertising.

34.     <u>WHY</u>: Defendant engaged in the material misrepresentations and omissions detailed herein for the express purpose of inducing Plaintiffs and other reasonable consumers to purchase and/or pay a premium for Product based on the belief that it actually functioned as a hand sanitizer, contained "62% ethyl alcohol," "kills 99.99% of germs," and "kills germs in 15 seconds." Defendant profited by selling Product to millions of unsuspecting consumers statewide in California, as well as nationwide.

## CLASS ACTION ALLEGATIONS

35.     Plaintiffs bring this class action on behalf of themselves individually and all others similarly situated, pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3).  Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this class action on behalf of themselves individually and all others similarly situated statewide in California. Plaintiffs seek to represent a class comprised of all persons in California who, on or after April 28, 2018 (the "Class Period")  purchased Product for household use and not for resale or distribution.

36.     The proposed class consists of all consumers who purchased Product in the State of California for personal use and not for resale, during the time period April 28, 2018, through the present. Excluded from the Class are Defendants, their affiliates, employees, officers and directors, any individual who received remuneration from Defendants in connection with that individual's use

or endorsement of Product, the Judge(s) assigned to this case, and the attorneys of record in this case. Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

37.   This action is properly brought as a class action for the following reasons:

(a) The members in the proposed class, which contains no less than one thousand members and based on good information and belief is comprised of several thousands of individuals, are so numerous that individual joinder of all members is impracticable and disposition of the class members' claims in a single class action will provide substantial benefits to the parties and Court, and is in the best interests of the parties and judicial economy.;

(b) Plaintiffs stand on equal footing with and can fairly and adequately protect the interests of all members of the proposed class. All marketing and packaging of units of Product bear the misleading "hand sanitizer,"  "62% ethyl alcohol," "kills 99.99% of germs," and "kills germs in 15 seconds" labeling. Defendant's false statements and advertising occur on the packaging of the units of Product itself, and thus every individual consumer who purchases Product is exposed to the deceptive advertising. Defendant has, or has access to, address information for the Class Members, which may be used for the purpose of providing notice of the pendency of this class action. Further, the class definition itself describes a set of common characteristics sufficient to allow a prospective plaintiff or class member to identify herself or himself as having a right to recover based on the description.;

(c) Plaintiffs will fairly and adequately represent and protect the interests of the class, have no interest incompatible with the interests of the class, and have retained counsel competent and experienced in class actions, consumer protection, and false advertising litigation. Plaintiffs' attorneys have the experience, knowledge, and resources to adequately and properly represent the interests of the proposed class. Plaintiffs have no interests antagonistic to those of other proposed class members, and Plaintiffs have retained attorneys experienced in consumer class actions and complex litigation as counsel.;

(d) Class treatment is superior to other options for resolution of the controversy because the relief sought for each class member is so small, that, absent representative litigation, it

would be infeasible for class members to redress the wrongs done to them. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudications with respect to individual members of the class and thus establish incompatible standards of conduct for the party or parties opposing the class. Further, individual cases would be so numerous as to inefficiently exhaust judicial resources. Plaintiffs seek damages and equitable relief on behalf of the proposed class on grounds generally applicable to the entire proposed class.;

(e) Questions of law and fact common to the class predominate over any questions affecting only individual class members. There are questions of law and fact common to the proposed class which predominate over any questions that may affect particular class members.  Such questions of law and fact common to Plaintiffs and the class include, without limitation:

    i.  Whether Defendant breached an express warranty made to Plaintiffs and the Class;

    ii.  Whether Defendant was unjustly enriched by its conduct;

    iii.  Whether Class Members suffered an ascertainable loss as a result of Defendant's misrepresentations;

    iv.  Whether, as a result of Defendant's misconduct as alleged herein, Plaintiffs and the Class Members are entitled to restitution, injunctive relieve and/or monetary relief, and if so, the amount and natural of such relief;

    v.  Whether Defendant made any statement it knew or should have known was false or misleading;

    vi.  Whether Defendants maintained a longstanding marketing policy, practice and strategy of labeling, advertising and selling Product with the "hand sanitizer," "62% ethyl alcohol," "kills 99.99% of germs," and "kills germs in 15 seconds" claims even though Product did not possess any such identity, composition or efficacy;

    vii.  Whether the utility of Defendant's practices, if any, outweighed the gravity of the harm to its victims;

viii.   Whether Defendant's conduct violated public policy, included as declared by specific constitutional, statutory, or regulatory provisions;

ix.   Whether Defendant's conduct or any of its practices violated the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.,* the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.,* The Federal Food, Drug and Cosmetics Act, 28 U.S.C. §§ 301 *et seq.* and its implementing regulations, 21 C.F.R. §§ 101 *et seq.,* the Cal. Health & Safety Code §§ 109875 et seq., or any other regulation, statute or law;

x.   Whether Defendant passed off Product as that of another, within the meaning of Cal. Civ. Code § 1770(a)(1);

xi.   Whether Defendant misrepresented the source, sponsorship, approval or certification of Product, within the meaning of Cal. Civ. Code § 1770(a)(2);

xii.   Whether Defendant misrepresented Product's affiliation, connection or association with, or certification by, another, within the meaning of Cal. Civ. Code § 1770(a)(3);

xiii.   Whether Defendant represented that Product has characteristics, uses, or benefits which it does not have, within the meaning of Cal. Civ. Code § 1770(a)(5);

xiv.   Whether Defendant represented that Product is of a particular standard, quality, or grade, when it was really of another, within the meaning of Cal. Civ. Code § 1770(a)(7);

xv.   Whether Defendant advertised Product with the intent not to sell it as advertised, within the meaning of Cal. Civ. Code § 1770(a)(9);

xvi.   Whether Defendant represented that Product has been supplied in accordance with a previous representation when it has not, within the meaning of Cal. Civ. Code § 1770(a)(16);

xvii.   The proper equitable and injunctive relief;

xviii.   The proper amount of restitution or disgorgement;

xix.   The proper amount of reasonable litigation expenses and attorneys' fees;

(f)  Plaintiffs' claims are typical of the claims of the members of the proposed class.  Plaintiffs and all class members have been injured by the same practices of Defendant.  Plaintiffs' claims arise from the same practices and conduct that give rise to the claims of all class members and are based on the same legal theories. Plaintiffs' claims are typical of class members' claims, as they are based on the same underlying facts, events and circumstances relating to Defendant's conduct.;

(g)  As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), (b)(1), (b)(2) and (b)(3), and may be appropriate for certification "with respect to particular issues" under Rule 23(b)(4).

## FIRST CAUSE OF ACTION

### Common Law Fraud

38.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

39.    Plaintiffs bring this claim individually and on behalf of the members of their proposed Class.

40.    As discussed above, Defendants provided Plaintiffs and the Class Members with false or misleading material information and failed to disclose material facts about the Product, including but not limited to the fact that the Product was a hand sanitizer, that it contained 62% ethyl alcohol and kills 99.99% of germs and kills germs within 15 seconds.  These misrepresentations and omissions were made with knowledge of falsehood given the gel's inaccurate composition and related reduced efficacy.

41.    The misrepresentations and omissions made by Defendants, upon which Plaintiffs the Class Members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class Members to purchase the Product.

42.    The fraudulent actions of Defendants caused damage to Plaintiffs and Class Members, who are entitled to damages and other legal and equitable relief as a result.

///

## SECOND CAUSE OF ACTION

### Intentional Misrepresentation

43.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

44.     Defendants represented to Plaintiffs and other class members that important facts were true. More specifically, Defendants represented to Plaintiffs and the other class members through their advertising and labeling scheme for the Product, that the Product constituted a hand sanitizer, that it contained 62% ethyl alcohol, and based on this potency level, that it killed germs in 15 seconds and that the Product killed  99.99% of germs.

45.     Defendants' representations were false. Defendants knew that the misrepresentations were false when they made them, or Defendants made the representations recklessly  and without regard for their truth. Defendants intended that Plaintiffs and other class members rely on the representations.

46.     Plaintiffs and the other class members reasonably relied on Defendants' representations.

47.     Plaintiffs and the other class members were financially harmed and suffered other damages, including but not limited to, emotional distress. Defendants' misrepresentations and/or nondisclosure were the immediate cause of Plaintiffs and the other class members purchasing the Product. Plaintiffs' and the other class members' reliance on Defendants' representations was the immediate cause of the financial loss and emotional distress (of the type that would naturally result from being led to believe that the product you are purchasing for sanitizing and health safety purposes has almost ten percent less alcohol than its label represents) sustained by Plaintiffs and the other class members.

48.     In absence of Defendants' misrepresentations and/or nondisclosure, as described above, Plaintiffs and the other class members, in all reasonable probability, would not have purchased the Product.

///

///

FIRST AMENDED CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### THIRD CAUSE OF ACTION

### Negligent Misrepresentation

49.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

50.     Plaintiffs bring this claim individually and on behalf of the proposed Class against Defendants.

51.     As discussed above, Defendants represented the Product  in fact is a hand sanitizer and contains "62% ethyl alcohol but failed to disclose that the Product actually had substantially less than 62% ethyl alcohol, and that the Product lacked the required minimum level of alcohol to qualify as a hand sanitizer.   Defendants had a duty to disclose this information. Similarly, Defendants represented the Product in fact "Kills 99.99% of germs" and kills germs in 15 seconds" but failed to disclose that the Product does not contain the active ingredient it claims to contain so cannot support its advertising to be effective as a hand sanitizer per the CDC guidelines, and therefore does not "kill" 99.99% of germs within 15 seconds. Defendants had a duty to disclose this information.

52.     At the time Defendants made these misrepresentations, Defendants knew or should have known that these misrepresentations were false or made them without knowledge of their truth or veracity. At an absolute minimum, Defendants negligently misrepresented or negligently omitted material facts about the Product.

53.     The negligent misrepresentations and omissions made by Defendants, upon which Plaintiffs and Class Members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class Members to purchase the Product.

54.     Plaintiffs and Class Members would not have bought the Product if they had known the true facts.

55.     The negligent actions of Defendants caused damage to Plaintiffs and Class Members, who are entitled to damages and other legal and equitable relief as a result.

///

///

1

**FOURTH CAUSE OF ACTION**

2

**Unjust Enrichment**

3      56.     Plaintiffs re-allege and incorporate by reference the allegations contained in the

4    paragraphs above as if fully set forth herein.

5      57.     Plaintiffs bring this claim individually and on behalf of the proposed Class against

6    Defendants.

7      58.     Plaintiffs and Class Members conferred benefit on Defendants by purchasing the

8    Product.

9      59.     Defendants have been unjustly enriched in retaining the revenues derived from

10   Plaintiffs' and Class Members' purchases of the Product. Retention of those moneys under these

11   circumstances is unjust and inequitable because the Product is not actually a hand sanitizer at all,

12   nor a hand sanitizer with a 62% ethyl alcohol concentration and resulted in purchasers being denied

13   the full benefit of their purchase because they did not purchase a hand sanitizer that actually

14   qualified as a hand sanitizer, contained 62% ethyl alcohol composition or the ability to kill 99.99%

15   of germs.

16      60.     Because Defendants' retention of the non-gratuitous benefits conferred on them by

17   Plaintiffs and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiffs

18   and Class Members for their unjust enrichment, as ordered by the Court.

19

**FIFTH CAUSE OF ACTION**

20

**Violation of Cal. Civ. Code §§1750, *et seq.***

21      61.     Plaintiffs re-allege and incorporate by reference the allegations contained in the

22   paragraphs above as if fully set forth herein.

23      62.     This cause of action is brought pursuant to the Consumers Legal Remedies Act,

24   California Civil Code §§ 1750, *et seq*. ("CLRA"). The CLRA prohibits any unfair, deceptive, and/or

25   unlawful practices, as well as unconscionable commercial practices in connection with the sales of

26   any goods or services to consumers. *See* Cal. Civ. Code §1770.

27

28

63.    The CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient economical procedures to secure such protection." Cal. Civ. Code § 1760.

64.    Defendants are each a "person" under the CLRA. Cal. Civ. Code §1761 (c).

65.    Plaintiffs and the putative Class Members are "consumers" under the CLRA.  Cal. Civ. Code §1761 (d).

66.    The Product constitutes a "good" under the CLRA. Cal. Civ. Code §1761 (a).

67.    Plaintiffs and the putative Class Members' purchases of the Product within the Class Period constitute "transactions'" under the CLRA. Cal. Civ. Code §1761 (e).

68.    Defendants' actions and conduct described herein reflect transactions that have resulted in the sale of goods to consumers.

69.    Defendants' failure to label the Product in accordance with California labeling requirements constitutes an unfair, deceptive, unlawful and unconscionable commercial practice.

70.    Defendants' actions have violated at least seven provisions of the CLRA, including §§ 1770(a)(1), 1770 (a)(2), 1770 (a)(3), 1770(a)(5), 1770(a)(7), 1770 (a)(9) and 1770(a)(16).

71.    As a result of Defendants' violations, Plaintiffs and the Class suffered, and continue to suffer, ascertainable losses in the form of the purchase price they paid for the unlawfully labeled and marketed Product, which they would not have paid had the Product been labeled correctly, or in the form of the reduced value of the Product relative to the Product as advertised and the retail price they paid.

72.    Pursuant to §1782 of the CLRA Plaintiffs notified Defendants in writing of the particular violations of § 1770 of the CLRA, and demanded Defendants rectify the actions described above by providing monetary relief, agreeing to be bound by their legal obligations, and to give notice to all affected consumers of their intent to do so. On or about February 4, 2021, Plaintiffs sent Defendants a notice and demand letter naming Plaintiff Steiner, and "all others similarly situated", specifically referring to and identifying the potential class of Plaintiffs, which includes Plaintiff Amnery Castaneda. This correspondence notified Defendants of their violations of the CLRA and the harm caused to California-wide and potentially nationwide Plaintiffs and further

placed on Defendant the burdens pursuant to § 1782(c)(1)-(4). Plaintiffs' Notice advised Defendants that if they refused the demand, Plaintiffs would seek monetary damages for themselves and all others similarly situated, as well as injunctive relief, restitution, and any other relief the Court may deem just and proper. Additionally, since April 2022, Defendant has specifically known that Plaintiff Castaneda is a harmed individual and member of the proposed class of Plaintiffs that Plaintiffs notified Defendant of in their initial CLRA Notice of February 4, 2022. Defendants failed to comply with the letter or their statutory requirements per § 1782(c). Consequently, pursuant to California Civil Code §1782, Plaintiffs, on behalf of themselves and all other members of the Class, seeks compensatory damages and restitution of any ill-gotten gains due to Defendants' acts and practices that violate the CLRA.

73.     Defendants have failed to rectify or agree to rectify at least some of the violations associated with actions detailed above and give notice to all affected consumers within 30 days of receipt of the Cal. Civ. Code § 1782 notice.  Thus, Plaintiffs seek actual damages and punitive damages for violations of the Act.

74.     In addition, pursuant to Cal. Civ. Code §1780(a)(2), Plaintiffs are entitled to, and therefore seek, a Court order enjoining the above-described wrongful acts and practices that violate Cal. Civ. Code §1770.

75.     Plaintiffs and Class Members are also entitled to recover attorneys' fees, costs, expenses, disbursements, and punitive damages pursuant to Cal. Civ. Code §§ 1780 and 1781.

## SIXTH CAUSE OF ACTION

### Violation of California Business & Professions Code §§ 17500, *et seq.*

76.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

77.     Defendants engaged in unfair and deceptive acts and practices, in violation of the California Business and Professions Code § 17500 *et seq.*, by marketing and/or selling the Product without disclosure of the material fact that the Product actually lacked the required amount of alcohol to qualify as a hand sanitizer, that the Product contained 62% ethyl alcohol, and that the Product lacked the ability to kill 99.99% of germs. These acts and practices, as described above,

have deceived Plaintiffs and other class members, causing them to lose money as herein alleged and have deceived and are likely to deceive the consuming public, in violation of those sections. Accordingly, Defendants' business acts and practices, as alleged herein, have caused injury to Plaintiffs and the other class members.

78.     Defendants had a duty to disclose that the Product did not contain at least 60% alcohol, or 62% ethyl alcohol or the advertised capacity to kill germs because this information was a material fact of which Defendants had exclusive knowledge; Defendants actively concealed this material fact; and Defendants made partial representations about the Product but suppressed some material facts.

79.     Defendants' misrepresentation and/or nondisclosure of the fact that the Product was not a hand sanitizer, and that the Product lacked 62% ethyl alcohol and the marketed effectiveness against germs was the immediate cause of Plaintiffs and the other class members purchasing the Product.

80.     In the absence of Defendants' misrepresentation and/or nondisclosure of facts, as described above, Plaintiffs and other class members would not have purchased the Product.

81.     Plaintiffs and the other class members are entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendants as a result of such business acts or practices, and enjoining Defendants to cease and desist from engaging in the practices described herein.

## SEVENTH CAUSE OF ACTION

### Violation of Business & Professions Code § 17200, *et seq.*

82.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

83.     Plaintiffs seek to represent a Class consisting of "All persons who purchased the Product in the State of California for personal use and not for resale during the time period April 28, 2018, through the present. Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Product."

84.     The UCL prohibits "any unlawful, unfair... or fraudulent business act or practice." Cal. Bus & Prof. Code § 17200.

85.     Pursuant to California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*., a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid," *or* "the utility of the defendant's conduct is outweighed by the gravity of the harm to the alleged victim.

86.     Defendants' actions of engaging in false and deceptive advertising, marketing, and labeling of the Product do not confer any benefit to consumers.

87.     Defendants' actions of advertising, marketing, and labeling the Product in a false, deceptive and misleading manner cause injuries to consumers because the consumers do not receive a quality of hand sanitizer commensurate with their reasonable expectation. Defendants' actions of advertising, marketing, and  labeling the Product in a false, deceptive and misleading manner also cause injuries to consumers because the consumers do not receive the benefits they reasonably expect from the Product. Additionally, Defendants' actions of advertising, marketing, and labeling the Product in a false, deceptive and misleading manner cause injuries to consumers because the consumers end up consuming a hand sanitizer that does not contain the active ingredient potency it claims to have and is therefore of a lower quality than what they reasonably were expecting and sought. Moreover, Defendants' actions of advertising, marketing, and labeling the Product in a false, deceptive and misleading manner cause injuries to consumers because the consumers end up overpaying for the Product and receiving a quality of hand sanitizer that is less than what they expected to receive.

88.     Consumers cannot avoid any of the injuries caused by Defendants' false, misleading and deceptive labeling, advertising, and marketing of the Product.

89.     Accordingly, the injuries caused by Defendants' activity of advertising, marketing, and labeling, the Product in a false, deceptive and misleading manner outweigh any benefits.

90.     Here, Defendants' conduct of advertising, labeling  and marketing the Product in a false, deceptive, and misleading manner has no utility and financially harms purchasers.  Thus, the utility of Defendants' conduct is vastly outweighed by the gravity of harm.

91.     Defendants' labeling, marketing, and advertising of the Product, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

92.     Defendants knew or should have known of their unfair conduct.

93.     As alleged in the preceding paragraphs, the misrepresentations by Defendants detailed above constitute an unfair business practice within the meaning of California Business and Professions Code § 17200.

94.     There were reasonable available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. Defendants could have marketed, labeled, advertised and packaged the Product truthfully, without any dishonest claims about the Product's potency, efficacy, composition and identity.

95.     All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

96.     Pursuant to Business and Professions Code §§ 17203 and 17535, Plaintiffs and the Class seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of advertising, labeling and marketing the Product in an untruthful manner.  Likewise, Plaintiffs and the Class seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiffs restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial. Plaintiffs and the Class Members also seek full restitution of all monies paid to Defendants as a result of their deceptive practices, interest at the highest rate allowable by law and the payment of Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Civil Code Procedure §1021.5.

97.     As a direct and proximate result of these acts, consumers have been and continue to be harmed. Plaintiffs and the Class Members have suffered injury and actual out-of-pocket losses as a result of Defendants' violation of the unfair prong of the UCL because Plaintiffs and the Class would not have bought the Product if they had known the truth regarding the identity, efficacy,

composition and identity of the Product. Plaintiffs and the Class paid an increased price due to the misrepresentations about the Product and the Product did not have the promised potency,  quality, efficacy, or value.

98.     California Business and Professions Code § 17200, *et seq.,* considers conduct fraudulent and therefore prohibits said conduct if it is likely to deceive members of the public.

99.     Defendants' marketing, labeling, and advertising of the Product, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes fraudulent conduct. As alleged in the preceding paragraphs, the misrepresentations by Defendants detailed above constitute a fraudulent business practice in violation of California Business & Professions Code § 17200 because they are likely to, and did indeed, deceive members of the public.

100.    Defendants knew or should have known of their fraudulent conduct.

101.    Pursuant to Business and Professions Code §§ 17203 and 17535, Plaintiffs and the Class seek an order of this Court requiring Defendants to cease the acts of fraudulent competition alleged herein.  Likewise, Plaintiffs and the Class seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiffs restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial. Plaintiffs and the Class Members also seek full restitution of all monies paid to Defendants as a result of their deceptive practices, interest at the highest rate allowable by law and the payment of Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Civil Code Procedure §1021.5.

102.    As a direct and proximate result of these acts, consumers have been and continue to be harmed. Plaintiffs and the Class Members have suffered injury and actual out-of-pocket losses as a result of Defendants' violation of the fraudulent prong of the UCL because Plaintiffs and the Class would not have bought the Product if they had known the truth regarding the strength and composition of the Product. Plaintiffs and the Class paid an increased price due to the misrepresentations about the Product and the Product did not have the promised potency, quality, efficacy, or value.

103. California Business and Professions Code § 17200, *et seq.,* identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable."

104. Defendants' labeling and marketing of the Product, as alleged in the preceding paragraphs, violates California Civil Code § 1750, *et. seq.,* California Business and Professions Code § 17500, *et. seq.,* California's Sherman Law, and the FDCA.

105. Under 21 U.S.C §352, the FDCA expressly defines a drug, such as a hand sanitizer, as misbranded if "its labeling is false or misleading in any particular." Similarly, California's Sherman Law, Cal. Health & Safety Code Chapter 6, Article 3, § 111330, states "any drug or device is misbranded if its labeling is false or misleading in any particular."

106. Defendants' labeling and marketing of the Product, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct. Defendants have violated the "unlawful prong" by violating, the FDCA, California's Sherman Law, as well as the State's FAL (Cal. Bus. & Prof. Code § 17500 *et seq.)* and CLRA (Cal. Civ. Code §1770 *et. seq*.).

107. Defendants knew or should have known of their unlawful conduct.

108. As alleged in the preceding paragraphs, the misrepresentations by Defendants detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code § 17200.

109. There were reasonable available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. Defendants could have refrained from misrepresenting the Product's effectiveness, composition and identity by not classifying the gel as a "hand sanitizer," containing "62% ethyl alcohol" as its only active ingredient that purportedly "kills 99.99% of germs," or "kills germs in 15 seconds".

110. All of the conduct alleged herein occurred and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

111. As a direct and proximate result of these acts, consumers have been and continue to be harmed. Plaintiffs and the Class Members have suffered injury and actual out-of-pocket losses

as a result of Defendants' violation of the unlawful prong of the UCL because Plaintiffs and the Class would not have bought the Product if they had known the truth regarding the composition of the Product. Plaintiffs and the Class paid an increased price due to the misrepresentations about the Product and the Product did not have the promised potency, quality, efficacy, or value.

112.   Pursuant to Bus. & Prof. Code §§ 17203 and 17535, Plaintiffs and the Class are therefore entitled to an order requiring Defendants to cease the acts of unfair competition alleged herein, full restitution of all monies paid to Defendants as a result of their deceptive practices, interest at the highest rate allowable by law and the payment of Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Civil Code Procedure §1021.5.

### EIGHTH CAUSE OF ACTION

### Breach of Express Warranty

113.   Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

114.   The Uniform Commercial Code § 2-313 provides that an affirmation of fact or promise, including a description of goods, becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the promise and to the description.

115.   At the time Plaintiffs, and each Class Member purchased the Product, they formed a contract with Defendants. The terms of that contract include the promises and affirmations of fact made by Defendant on the Product's labels and through Defendants' marketing campaign, as described above. Defendant expressly warranted that the Product, amongst other things,  possessed the requisite characteristics to function as a hand sanitizer, and that the Product contained 62% ethyl alcohol. Plaintiffs placed importance on Defendants' claims. Defendants' claims constitute an affirmation of fact that became a part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise. The Product's labeling and advertising constitute an express warranty because they are part of the basis of that bargain, and are part of a standardized contract between Plaintiffs and The Class Members on one hand, and Defendants on the other.

116.   At all times, California has codified and adopted the provisions of the Uniform

1   Commercial Code governing the express warranties of merchantability. Cal. Comm. Code § 2313.

2       117.   All conditions precedent to Defendants' liability under this contract have been

3   performed by Plaintiffs and the Class.

4       118.   Defendants breached the terms of this contract, including the express warranties, with

5   Plaintiffs and the Class by failing to provide Product that can perform as advertised.

6       119.   Defendants are in privity with Plaintiffs and the Class Members by selling directly to

7   members of the public, and by warranting the Product to them directly or through the doctrine of

8   agency.

9       120.   Plaintiffs and The Class Members were injured as a direct and proximate result of

10  Defendants' breach because Plaintiffs and the Class would not have bought the Product if they had

11  known the truth regarding the composition of the Product. Plaintiffs and the Class paid for the

12  Product in reliance on Defendants' mislabeling and the Product did not have the promised potency,

13  quality, efficacy, or value.  Consequently, Plaintiffs and the Class have been damaged.

14                          **NINTH CAUSE OF ACTION**

15          **Breach of Implied Warranty of Fitness for a Particular Purpose**

16      121.   Plaintiffs re-allege and incorporate by reference the allegations contained in the

17  paragraphs above as if fully set forth herein.

18      122.   Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers,

19  impliedly warranted that the Product is merchantable as a hand sanitizer.

20      123.   Defendants breached the warranty implied in the contract for the sale of the Product

21  because the Product could not "pass without objection in the trade under the contract description,"

22  was not "of fair average quality within the description," was not "adequately contained, packaged,

23  and labeled as the agreement may require," and did not "conform to the promise or affirmations of

24  fact made on the container or label." *See* U.C.C. § 2-314(2). As a result, Plaintiffs and Class

25  members did not receive the goods as impliedly warranted by Defendants to be merchantable.

26      124.   The Product was not altered by Plaintiffs or Class Members. The Product was

27  defective when it left the exclusive control of Defendants. Moreover, Defendants knew that the

28  Product would be purchased and used without additional testing by Plaintiffs and Class Members.

125.   The Product was defectively designed and unfit for its intended purpose and Plaintiffs and Class Members did not receive the goods as warranted.

126.   As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and Class Members have been injured and harmed because they would not have purchased the Product if they knew the truth about the Product and the Product they received was worth substantially less than the product they were promised and expected.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the Class defined herein, pray for judgment and relief on all Causes of Action as follows:

A.   This action be certified and maintained as a class action and certify the proposed class as defined, appointing Plaintiffs as representatives of the Class, and appointing the attorneys and law firms representing Plaintiffs as counsel for the Class;

B.   For an order declaring the Defendants' conduct violates the statutes referenced herein;

C.   That the Court awards compensatory, statutory and/or punitive damages as to all Causes of Action where such relief is permitted;

D.   That the Court awards Plaintiffs and proposed class members the costs of this action, including reasonable attorneys' fees and expenses;

E.   For an order enjoining Defendants from continuing to engage in the unlawful conduct and practices described herein;

F.   That the Court awards equitable monetary relief, including restitution and disgorgement of all ill-gotten gains, and the imposition of a constructive trust upon, or otherwise restricting the proceeds of Defendants' ill-gotten gains, to ensure that Plaintiffs and proposed class members have an effective remedy;

G.   That the Court awards pre-judgment and post-judgment interest at the legal rate;

H.   That the Court orders appropriate declaratory relief; and

I.   That the Court grants such other and further as may be just and proper.

///

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Dated:         April 17, 2024         Respectfully Submitted,

By: _____
ALTAIR LAW
Craig Peters, Esq.
*cpeters@altairlaw.com*
465 California Street, Fifth Floor
San Francisco, CA 94104-3313
Tel: (415) 988-9828
Fax: (415) 988-9815


DOGRA LAW GROUP PC
Shalini Dogra, State Bar No. 309024
*shalini@dogralawgroup.com*
2219 Main Street, Unit 239
Santa Monica, CA 90405
Tel: (747) 234-6673
Fax: (310) 868-0170

FIRST AMENDED CLASS ACTION COMPLAINT

# EXHIBIT 1
# (Plaintiffs' Venue Declarations)

1

2

### <u>DECLARATION OF DANIELLE STEINER</u>

3

I, Danielle Steiner, declare as follows:

4

1.  I am the Plaintiff in the above titled lawsuit against Vi-Jon LLC, related to the unlawful sale

5

of falsely advertised and marketed "Germ X" hand sanitizers.

6

2.  I am competent adult, over eighteen years of age, and at all times material to this action I

7

have been a citizen of the United States, residing in California. I make this declaration

8

pursuant to California Civil Code §1780(d).

9

3.  The Complaint filed in this action is filed in a proper place for trial because at one named

10

Defendant is doing business in this county and district, and one of more of the transactions

11

that form the basis of this action occurred in this county and district.

12

I declare under penalty of perjury under the laws of the State of California and the United States

13

that the foregoing is the foregoing is true to the best of my knowledge. Executed this 28th day of

March 2024 in Santa. Cruz, California.

14

15

16

17

Dated: March 28, 2024

*Danielle Steiner*

18

Danielle Steiner

19

20

21

22

23

24

25

26

27

28

1
2

## **DECLARATION OF AMNERY CASTANEDA**

3

I, Amnery Castaneda, declare as follows:

4

1. I am the Plaintiff in the above titled lawsuit against Vi-Jon LLC, related to the unlawful sale
5
   of falsely advertised and marketed "Germ X" hand sanitizers.

6

2. I am competent adult, over eighteen years of age, and at all times material to this action I
7
   have been a citizen of the United States, residing in California. I make this declaration
8
   pursuant to California Civil Code §1780(d).

9

3. The Complaint filed in this action is filed in a proper place for trial because at one named
10
    Defendant is doing business in this county and district, and one of more of the transactions
11
    that form the basis of this action occurred in this county and district.

I declare under penalty of perjury under the laws of the State of California and the United States
12
that the foregoing is the foregoing is true to the best of my knowledge. Executed this 28th day of
13
March 2024 in Orange, California.

14
15
16
17
Dated: March 28, 2024

18

Amnery Castaneda

19
20
21
22
23
24
25
26
27
28

1
PLAINTIFF CASTANEDA'S VENUE DECLARATION